## JOHNSON *v.* THE STATE.

1. Motions for continuance are addressed to the sound discretion of the court, and the judgment of the court refusing a continuance will not be reversed unless it is shown that he flagrantly abused his discretion.
2. The remark of the court, though made in the presence and hearing of the panel of jurors, but before any juror had been selected for the trial of the case, to the effect that under a decision of the Supreme Court, "this case may go to the Supreme Court," was not good ground for challenge to the array, in view of the explanation made by the court in the presence of and to the jury.

No. 3467. APRIL 14, 1923.

Indictment for murder. Before Judge Park. Baldwin superior court. October 6, 1922.

*Allen & Pottle,* for plaintiff in error.

*George M. Napier,* attorney-general, *Doyle Campbell,* solicitor-general, *Seward M. Smith,* assistant attorney-general, *A. Y. Clement,* and *Burwell & Fleming,* contra.

BECK, P. J. The plaintiff in error, Cleon Johnson, was put upon trial for the murder of Lonnie Griffin; and the jury trying the case returned a verdict of guilty with a recommendation. Thereupon the accused made a motion for new trial, which was overruled, and he excepted.

1. The original motion for a new trial contains the usual general grounds. An amendment to the motion contains two

special grounds. In the first ground of the amendment error is assigned upon the judgment of the court refusing a continuance upon motion made by the defendant. This ground was based upon the absence of a witness for the defendant, who had been duly subpœnaed; and upon that motion the following evidence was submitted: Cleon Johnson, the defendant, testified: "I have an absent witness named Charley Godfrey. He is not absent by my procurement or consent. I am not making this motion for delay, but only to have him here. He lives about two miles from Devereaux, I don't know in what county. The difficulty I had with Lonnie Griffin, the deceased, took place at Mr. B. Renfroe's in this county. Charley Godfrey was there. I can prove by him that Lonnie Griffin was the starting of the difficulty. I expect to prove by him that we were on the outside of the house and Lonnie Griffin came out there and said to me, did I say he ordered me out of the house, and I said, 'You did,' and he said I was a damn lie, and Charley Godfrey said, 'Lonnie, I wouldn't say that,' and Lonnie said to Charley Godfrey, 'You are a damn lie, and I will slap your damn head off,' or something like that; and that then Lonnie went back in the house. That was something like 30 minutes before the killing, I suppose. Then Charley Godfrey drove off in his car and went home. In the house, Lonnie Griffin ordered me out of the house. That was the real starting of the whole thing. I suppose Godfrey has been subpœnaed. Tom was out there where Godfrey was, and Luther Floyd and two or three more boys. I don't know whether any of them heard what Godfrey heard. Godfrey is at home now, I guess. I have had no conversation with him whatever since the night of the homicide. There were other witnesses there pretty close by. I guess they are here. I guess what I have said is all I want to prove by him; that he heard Lonnie Griffin curse me and himself too. No, I didn't kill Lonnie Griffin until something like 30 minutes after that. The witness, Godfrey, was not there at the time of the homicide. The first beginning of this difficulty that resulted in this boy's getting killed was out in the yard. Lonnie Griffin came out there and called me and said he wanted to see me, and he said, 'Did you say I ordered you out of the house?' and I said, 'You did,' and he said, 'You are a damn liar, and anybody that said I did is a damn lie.' I didn't say anything then.

Then Godfrey said to him, 'I wouldn't say that; you did order him out of the house.' Mr. Godfrey was present when Griffin said that, and then Godfrey went off in his automobile. Yes, the killing occurred half and hour after that. I haven't seen or talked with the witness, Godfrey, since I have been in jail."

Two other witnesses introduced by the movant gave testimony showing that the absent witness would testify substantially as the movant claimed he would testify if present. At the time the motion for a continuance was made there were present two other witnesses, who had been subpoenaed by the defendant, and who were ready to give the same testimony as the absent witness, Charley Godfrey, had he been present. One of the witnesses present did actually testify to the same facts that the absent witness would have testified to, and it is so stated in the brief of counsel for plaintiff in error. But it is insisted that the testimony of the absent witness " would have been very much stronger than the testimony of those who were present and testified." Considering the nature of the testimony which it was shown the absent witness would have given, and the fact that other witnesses who were present would give the same testimony and that one of them did so actually testify, we can not say that the court abused his discretion in refusing a continuance. It does not appear that even if Godfrey had been present and had testified, and his testimony had been accepted as true by the jury, it would have justified the homicide or reduced it from murder to manslaughter. Moreover, as pointed out above, there were other witnesses present to testify to the same facts. In the case of *Huffman* v. *State*, 95 *Ga.* 469 (20 S. E. 216), it was said: " It is not cause for reversing the denial of a continuance that the movant made a legal showing as to the absence of one witness, it appearing by the same showing, on cross-examination, that another witness was present by whom he could prove the facts to which the absent witness was expected to testify, and it not appearing that the discretion of the court was abused." And in the case of *Blount* v. *State*, 18 *Ga. App.* 204 (89 S. E. 78), it was said: " Under the facts of this case it does not appear that the trial judge abused his discretion in refusing to grant a continuance on account of the absence of one of the defendant's witnesses (his daughter) ; for upon the hearing of the motion it was shown that testimony as to the facts expected to be

elicited from the absent witness could be had from other witnesses then present (also his children), and upon the trial the same facts were testified to by the other witnesses. Penal Code, §§ 987, 992. Under such circumstances a motion for continuance may sometimes be overruled without an abuse of discretion, even though in other respects a complete legal showing as to continuance be made."

We do not think it is sound to say as a broad, universal proposition that the fact that a defendant in a criminal case has present one or more witnesses who would testify to the same state of facts as an absent witness, who has been duly subpœnaed and is absent without fault on the part of the defendant, would deprive a defendant of the right to a continuance in order to procure the presence of the absent witness; because it might easily be that the testimony of the absent witness would relate to facts of such a vital character as would render his presence necessary to the defense,— might relate to facts of such a character that a defendant would be deprived of his rights unless he could have all of his witnesses, however numerous they might be, present in court. But considering the testimony of the absent witness in this case, we think that the ruling made in the *Huffman* case, supra, and those following it, should be applied here; and we do so apply it, holding that under the facts no abuse of discretion was shown.

2. In the remaining ground of the amendment to the motion error is assigned upon the judgment of the court overruling the defendant's challenge to the array put upon him by the State. It is alleged in this ground that immediately after the court overruled the motion for a continuance the judge, in the presence and hearing of all the jurors attending upon the court, made the following statement: " Following this Supreme Court decision in the 95th *Georgia,* as this case may go to the Supreme Court, I wish to say that I have kept these defendants in jail, and I believe that a man is entitled to a speedy trial, and it is developed in this case that there are other witnesses that will swear to the same facts." Counsel for the prisoner immediately excepted to this remark, on the ground that " it is an expression of opinion on the part of the court that the defendant will be convicted." And then when the array was put upon the defendant the defendant filed a

written challenge to the array, on the ground that the entire panel was disqualified, having heard the statement of the court above set forth. Immediately prior to the filing of the challenge to the array the court stated, in the presence and hearing of the entire panel of jurors, that what he meant was " that in the event it was carried up at all, it might be carried to the Supreme Court." After the filing of the challenge to the array the court stated in the presence and hearing of the jury, requiring the stenographer to take down his remarks: " The solicitor-general was reading some report from the Court of Appeals in reference to the motion to continue, and read where a case was referred to in a decision by the Supreme Court on the same question; and I asked him to get the Supreme Court report and cite that question to the court. And what I intended to convey (although I do not pretend that I used that language) was, in the event the case went up at all, it would go to the Supreme Court. And I don't want these jurors to have the impression on their minds I thought this case would have to be carried up at all either to the Court of appeals or to the Supreme Court. In view of the objections filed upon that, I wish to state: if any remarks made by the court made any impression on the minds of the jury, I want them to disqualify. I wish to reiterate, I did not intend to intimate that this defendant would be convicted of any offense whatever. And with that statement in the presence of the forty-eight jurors, I overrule these objections." In view of the explanatory remarks of the court, it was not error to overrule the challenge to the array. If the jurors who heard the remark knew that only in the event of a conviction could a motion for new trial be made, and upon refusal of the same a writ of error could be sued out to the Supreme Court, they would doubtless have interpreted the remark of the court to mean that in case of a conviction the case might go to the Supreme Court. And putting that interpretation upon the words of the judge and coupling it with the explanation made by him in the presence and hearing of the jury, the court did not err in overruling the challenge to the array. " The rule of law which forbids a judge to express or intimate his opinion as to the facts of a case or as to the guilt of the accused has reference to the expression or intimation of such opinion during the progress of the trial. Code, § 3248. No such expression or intimation of opinion is involved in the use of the word 'murder' in the order

calling the special term 'for the purpose of trying criminal business and especially to try such as may be indicted for the murder of J. G. Wells.'" *Stevens* v. *State,* 93 *Ga.* 307 (20 S. E. 331).

The general grounds of the motion were not urged in the brief of counsel for the plaintiff in error.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting.*